1

2

3

4

5

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF NEVADA**

8

9    WILLIE BYRON WARREN, JR.,              )
                                            )
10              Petitioner,                 )        2:07-cv-1186-PMP-RJJ
                                            )
11   vs.                                    )
                                            )        **ORDER**
12   E.K. McDANIEL, *et al.*,               )
                                            )
13              Respondents.                )
                                            )
14   _____)

15

16           This action is a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254, by

     Willie Warren, Jr., a Nevada prisoner.  The action comes before the court with respect to its merits.
17
     The Court will deny the petition.
18
     **I.  Facts and Procedural Background**
19
             Petitioner was charged by Second Amended Information on December 10, 2003, in
20
     the Eighth Judicial District Court for Clark County with conspiracy to commit robbery (count I) and
21
     robbery (count II) .  Exhibit G.[1]  After a jury trial was held on February 10, 2004, petitioner was
22
     convicted on Count II, robbery  Exhibits I and J.  The state filed its notice of intent to seek
23
     punishment as a habitual criminal.  Exhibit K.   Sentencing was held on March 16, 2004, and the
24
     state district court sentenced petitioner to 180 months in prison, with parole eligibility in 72 months
25

26   _____
             [1]  The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in
     support of their answer and are located in the record at docket #9.

1    for the robbery conviction, declining to find petitioner an habitual criminal or enhance the sentence

2    on that basis.  Exhibit L.   The court entered an amended judgment of conviction on May 13, 2004,

3    which included the sentence for the robbery conviction.  Exhibit N.

4              Petitioner appealed both judgments of conviction, and the Nevada Supreme Court

5    affirmed the judgment of conviction. Exhibits O and W.[2]  On June 30, 2006, petitioner filed a state

6    habeas corpus petition.  Exhibit Z.  The state district court denied the petition.  Exhibit CC.

7    Petitioner appealed and the Nevada Supreme Court affirmed the lower court's denial.  Exhibits DD

8    and FF.

9              Petitioner mailed a federal habeas corpus petition on August 27, 2007 (docket #5).

10   Respondents have answered the petition (docket #9) and petitioner has filed a reply (docket #11).

11   **II.  Federal Habeas Corpus Standards**

12             The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal

13   standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

21   28 U.S.C. §2254(d).

22             The AEDPA "modified a federal habeas court's role in reviewing state prisoner

23   applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are

24   given effect to the extent possible under law."  *Bell v. Cone,* 535 U.S. 685, 693 (2002).   A state

25   court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28

26   _____

   [2] *Warren v. State*, 124 P.3d 522 (Nev. 2005).

1    U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the

2    Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially

3    indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

4    different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)

5    (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

6               A state court decision is an unreasonable application of clearly established Supreme

7    Court precedent "'if the state court identifies the correct governing legal principle from [the

8    Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's

9    case.'" *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).  The unreasonable application

10   clause "requires the state court decision to be more than incorrect or erroneous"; the state court's

11   application of clearly established law must be objectively unreasonable.  *Id.* (*quoting Williams*, 529

12   U.S. at 409).  *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

13              In determining whether a state court decision is contrary to, or an unreasonable

14   application of, federal law, this Court looks to a state court's last reasoned decision.  *See Ylst v.*

15   *Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir.

16   2008) (en banc).

17              Moreover, "a determination of a factual issue made by a State court shall be

18   presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of

19   correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

20   **III.  Discussion**

21           **A.  Ground One**

22              In ground one petitioner alleges that trial counsel failed to investigate and interview

23   eyewitness Sheila Woods.  Petitioner states that Woods was his co-defendant who entered a guilty

24   plea to conspiracy to commit robbery.  Petitioner contends that Woods told the court during her plea

25   canvass that no force was used in the commission of the crime against Detective Gagnon, who was

26   an undercover agent and that this testimony could have been used by counsel to obtain a reduced

1    charge or conviction from robbery to larceny of a person.

2           In order to prove ineffective assistance of counsel, petitioner must show (1) that

3    counsel acted deficiently, in that his attorney made errors so serious that his actions were outside the

4    scope of professionally competent assistance and (2) the deficient performance prejudiced the

5    outcome of the proceeding.  *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).

6           Ineffective assistance of counsel under *Strickland* requires a showing of deficient

7    performance of counsel resulting in prejudice, "with performance being measured against an

8    'objective standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v.*

9    *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

10   ineffective assistance claim, a federal habeas court may only grant relief if that decision was

11   contrary to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,*

12   540 U.S. 1, 5 (2003).  There is a strong presumption that counsel's conduct falls within the wide

13   range of reasonable professional assistance.  *Id.*

14          Petitioner raised the instant ground for relief in his state habeas corpus petition.

15   Exhibit Z.  The state district court rejected the claim, and on appeal, the Nevada Supreme Court

16   affirmed the lower court's denial of the claim, stating:

17                  Finally, Warren asserted that counsel was ineffective for not
             investigating witnesses he requested.  Warren's accomplice in the robbery
18           pleaded guilty to conspiracy to commit robbery.  During her plea canvass,
             she denied that force was used to rob the officer.  Warren argued that
19           counsel was aware of the accomplice's plea canvass and failed to secure
             witnesses to corroborate it.  However, Warren failed to identify what
20           potential witnesses, if any, could have testified that no force was used
             during the robbery.  Moreover, force is not a necessary element of robbery.
21           [fn 11: *See* NRS 200.380(1).] We conclude that the district court did not err
             in denying this claim.
22   Exhibit FF.

23          The factual findings of the state court are presumed correct, and the factual finding

24   that petitioner's detention was lawful is supported by the record.  28 U.S.C. § 2254(e)(1);  *Cook v.*

25   *Schriro*, 516 U.S. 802, 816 (9th Cir. 2008); *Miller-El v. Cockrell*, 537 U.S. 32 (2003).  Under

26   Nevada law, force is not a necessary element to the charge of robbery.  NRS 200.380 defines

4

1  robbery as

2  > the unlawful taking of property from the person of another by means of force or
   > violence or fear of injury, immediate or future, to his person or property, or the
3  > person or property of a member of his family or of anyone in his company at the
   > time of the robbery.

4

5  Thus, even if counsel had called the co-defendant or any other eye-witness who would testify that no

6  force was used, the testimony of victim/Detective Gagnon would have countered the testimony.

7  Gagnon testified that defendant pushed his head at least two times with increasing violence, and that

8  he feared that the defendant was going to hit him.  Exhibit I, p. 72.  Moreover, as respondents

9  suggest, the decision not to call Ms. Woods to testify was likely a strategic decision on the part of

10 counsel, who could foresee that her testimony would cause more harm than good by placing the facts

11 of the conspiracy to commit robbery squarely before the jury.[3]  The Nevada Supreme Court's

12 decision on this claim is correct and cannot be revisited under 28 U.S.C. § 2254.

13  **B. Ground Two**

14  In ground two petitioner alleges that trial counsel failed to present entrapment as a

15 theory of defense and ask for a jury instruction on the issue.  Petitioner asserts that counsel agreed

16 with the district attorney to not use the word "entrapment."

17  Petitioner raised this ground for relief in his state habeas corpus petition and the state

18 district court rejected petitioner's contentions.  Exhibits Z and CC.  On appeal the Nevada Supreme

19 Court affirmed the lower court's denial of the claim, stating:

20  > Warren argued that his counsel was ineffective for not presenting
   > an entrapment defense and requesting a corresponding instruction.
21 > Warren's conviction stemmed from a robbery decoy operation conducted
   > by the Las Vegas Metropolitan Police Department to curb the high number
22 > of street robberies and larcenies committed in downtown Las Vegas.
   > Initially, Warren indicated at trial that he was raising an entrapment
23 > defense.  The State responded that it intended to offer a minute order
   > reflecting Warren's California conviction for larceny to rebut the
24 > entrapment defense.

25  > "[E]ntrapment is an affirmative defense," and "[t]he defendant

26  ────────────────────

[3] As previously noted, petitioner was found not guilty on the conspiracy charge.

bears the burden of producing evidence of governmental instigation." [fn 4: *Foster v. State*, 116 Nev. 1088, 1091, 13 P.3d 61, 63 (2000).] "Once the defendant puts forth evidence of governmental instigation, the State bears the burden of proving that the defendant was predisposed to commit the crime. [fn 5: *Id.*] To prove predisposition, the State is entitled to offer proof of specific instances of conduct such as a prior conviction. [fn 6: NRS 48.055(2); *Foster*, 116 Nev. At 1095, 13 P.3d at 66.]

Here, over counsel's objection, [fn 7: Counsel objected to the admission of the minute order, arguing that the document was insufficient to establish that the person referenced in it was Warren.] the district court ruled that if Warren testified and raised an entrapment defense, the prior California conviction could be used for both impeachment and to show predisposition. [fn 8: Warren also argued that the district court erred in admitting the minute order for impeachment purposes. However, as this claim is appropriate for direct appeal, it is procedurally barred. *See* NRS 34.810(1)(b)(2). Moreover, he raised this matter on direct appeal and further consideration of it is barred by the law of the case. *See Hall v. State*, 91 Nev. 314, 535 P.2d 797 (1975). This Court concluded that the district court erred in ruling the minute order admissible for impeachment purposes, but that the error was harmless because it was admissible to show Warren's predisposition to commit robbery if he raised an entrapment defense.] Subsequently, Warren did not testify or call any witnesses. Counsel responded negatively to the district court's query whether an entrapment instruction was necessary, stating that the defense had presented no evidence of entrapment. Counsel's strategic or tactical decisions are "'virtually unchallengeable absent extraordinary circumstances.'" [fn 9: *Doleman v. State*, 112 Nev. 843, 848, 921 P.2d 278, 280 (1996) (quoting *Howard v. State*, 106 Nev. 713, 722, 800 P.2d 175, 180 (1990) *abrogated on other grounds by Harte v. State*, 116 Nev. 1054, 13 P.3d 420 (2000)).] When faced with evidence of a prior larceny conviction showing Warren's predisposition to commit robbery, counsel abandoned an entrapment defense. And because no evidence of entrapment was introduced, an instruction on this defense was inappropriate. [fn 10: ] We conclude that Warren failed to demonstrate that his counsel was ineffective in this regard. The district court did not err in denying this claim.

Exhibit FF.

As the Nevada Supreme Court noted, counsel's intended defense was undermined by the court's decision to allow the prosecution to use a certified minute order from California to impeach the petitioner should he testify. Counsel could not have successfully raised the entrapment defense with that document available and because no defense witnesses testified to the entrapment, counsel could not argue the point in closing, nor was he entitled to an entrapment defense jury instruction. Counsel's decision was tactical and petitioner has not shown that the Nevada Supreme

1   Court's decision was unreasonable or contrary to clearly established federal law.  This claim shall be

2   denied.

3   **C.  Ground Three**

4        In ground three, petitioner claims that he was denied his Fifth, Sixth and Fourteenth

5   Amendment rights to confront witnesses, due process and equal protection when the court allowed

6   the use of a Minute Order conviction from California to impeach petitioner's testimony and to rebut

7   an entrapment defense.  Petitioner further alleges that the minute order in question was not a

8   certified judgment of conviction and was not relevant to the matter because he was not the same

9   person as named defendant.  No hearing was conducted to test the validity of the document or its

10  contents, despite counsel's objection to its use and it veracity.

11       Respondents contend that this ground for relief is unexhausted, procedurally barred,

12  and without merit.

13       First, the court finds the claim is exhausted and not procedurally barred, as the claim

14  was raised on direct appeal as a violation of petitioner's rights to a fair trial and due process under

15  both the state and federal constitution.  *See* Exhibit S, pp 9-17; Exhibit U, p. 5.  Because it was

16  properly raised and decided on direct appeal, no procedural bar exists. *See* Exhibit W.  However, this

17  does not end the chase in petitioner's favor, as the holding of the Nevada Supreme Court in deciding

18  the claim on direct appeal was not contrary to or an unreasonable application of clearly established

19  federal law.  Neither was it an unreasonable determination of the facts in light of the evidence

20  presented.  In its Opinion on direct appeal, the Nevada Supreme Court found the following facts:

21           Warren's counsel informed the court that Warren would be testifying in his
         defense. The district court conducted the appropriate Fifth Amendment colloquy.
22       Warren's counsel inquired whether the State would use the minute order of the
         California conviction for impeachment purposes if he testified. The State answered
23       affirmatively. Warren's counsel renewed his objection that the prior conviction
         should be excluded on the basis of identity. The district court ruled that if Warren
24       took the stand and presented an entrapment defense, the prior conviction could be
         used for both impeachment purposes and to show predisposition.

25
             During a recess, the State informed the court that it also had a 1984
26       conviction for Warren from Washington. The State wished to use this conviction for
         impeachment and rebuttal purposes. In addition, the State wished to use the

fingerprints and photo accompanying the Washington conviction to establish that the California minute order conviction referred to Warren. [FN4. The State presented evidence that the fingerprints on the Washington conviction matched the FBI fingerprint identification number for Warren and that same FBI identification number appeared in the California conviction. Based on this evidence, the district court concluded that the California conviction was Warren's.] Warren objected.

The district court ruled that the California conviction was admissible, but prohibited the State from using the Washington conviction for impeachment or rebuttal purposes due to its remoteness in time. Warren did not testify, make an opening statement, or call any witnesses. Consequently, the California conviction was never offered for admission.

During the settling of jury instructions, the district court inquired whether an entrapment instruction was necessary. Warren's counsel stated that it was not necessary because he had not put on any evidence of entrapment. Neither party objected to any of the jury instructions.

At closing argument, Warren's counsel, having abandoned the entrapment defense, argued that the money could not be considered stolen because it was put in Gagnon's pocket with the purpose of being taken by someone else. Effectively, the money was being offered for people to take. Therefore, Warren could not have stolen something that someone was giving away for free.

*Warren v. State,* 121 Nev. 886, 890-891, 124 P.3d 522, 525 (Nev.2005) Exhibit W. Based on these facts, the court's legal decision must stand, as it was not contrary to or an unreasonable application of clearly established federal law. The Nevada Supreme Court considered the applicability of the United States Supreme Court decision in *Luce v. U.S.,* 469 U.S. 38, 105 S.Ct. 460 (1984), to the facts of petitioner's case. *Luce* holds that in order for a defendant to obtain federal review of a claim of improper use of a prior conviction for impeachment, the defendant must have testified. *Id.,* at 43, 105 S.Ct. 460. In this instance, petitioner did not testify, so under *Luce* he could not have obtained a review of his claim in this court. Although the Nevada Supreme Court ultimately rejected the constraints of *Luce*, its decision to do so does not  impinge on petitioner's federal constitutional rights. In fact, the court accepted, reviewed, and rejected petitioner's claim finding that the admission of the conviction, while improper for impeachment was proper to show predisposition. *Warren*, 121 Nev. at 895-897, 124 P.3d at 528-529. Petitioner is not entitled to relief on this claim from this court.

**IV.  Certificate of Appealability**

8

In order to proceed with an appeal from this court, petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.*  The Supreme Court has held that a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus.  Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the Court determines that none meet that standard.  Accordingly, the Court will deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus (docket #5) is **DENIED**.

**IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT ACCORDINGLY**.

/ / /

/ / /

9

1    **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

2    **APPEALABILITY**.

3

4    DATED:  April 6, 2010.

5

6    _____

7    PHILIP M. PRO
     United States District Judge